Filed 6/24/24  In re Vicente D. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re VICENTE D. et al., Persons Coming Under the Juvenile Court Law. | B331436 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.T. et al. Defendants and Appellants. | Los Angeles County Super. Ct. No. 21CCJP02280 |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Losnick, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant Felipe D.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant R.T.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Felipe D. (father) challenges the juvenile court's order terminating his parental rights over his child, Vicente D., under Welfare and Institutions Code section 366.26.[1] Father contends the juvenile court erred by not applying the parental-benefit exception to adoption. (§ 366.26, subd. (c)(1)(B).) For the reasons discussed below, we affirm.

R.T. (mother) separately appeals but does not present her own arguments. She requests reversal of the juvenile court's termination of her parental rights if we reverse termination of father's parental rights. Because we reject father's contention on appeal, we necessarily reject mother's as well.

The parties are familiar with the facts and procedural history of the case, so we do not fully restate those details here. Instead, in the Discussion, *post*, we discuss the facts as needed to provide context for and resolve the issues presented on appeal.

## DISCUSSION

### A.  Governing Law and Standards of Review

Once the juvenile court terminates reunification services and determines a dependent child is adoptable, it must select adoption as the permanent plan and terminate parental rights unless it finds doing so would be detrimental to the child under one of several statutory exceptions. (§ 366.26, subd. (c)(1); *In re Caden C.* (2021) 11 Cal.5th 614, 630-631 (*Caden C.*).)

One exception is the "parental-benefit exception," which may apply if the parent has "maintained regular visitation and

_____

1  All subsequent undesignated statutory references are to the Welfare and Institutions Code.

2

contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "From the statute, [our Supreme Court has] readily discern[ed] three elements the parent must prove to establish the exception: (1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C., supra*, 11 Cal.5th at p. 631, original italics.)

When considering a juvenile court's "decision[ ] about whether to apply the beneficial relationship exception" codified in section 366.26, subdivision (c)(1)(B)(i), several standards of review apply. (*Caden C., supra*, 11 Cal.5th at p. 639.) "A substantial evidence standard of review applies to the first two elements" of the parental-benefit exception. (*Id.*, at pp. 639-640.) "The third element . . . is somewhat different." (*Id.* at p. 640.) The factual bases on which the juvenile court determines detriment under the third element are subject to substantial evidence; the ultimate weighing of facts and determination of detriment is subject to abuse of discretion. (*Ibid.*)

When reviewing factual determinations for substantial evidence, "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)" (*Caden C., supra*, 11 Cal.5th at p. 640.) "Review for abuse of discretion is subtly different, focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ""[it] has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."" [Citation.]" (*Id.* at p. 641.) At core, this "hybrid standard . . . simply embodies the principle that '[t]he statutory

3

scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination . . . reached pursuant to the statutory scheme's comprehensive and controlling provisions.' [Citation.]" (*Ibid.*)

We consider each of the three elements of the parental-benefit exception in the analysis below.

## B.     Analysis

"The first element—regular visitation and contact—is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C., supra*, 11 Cal.5th at p. 632.)

This element is not in dispute for father.[2] Although father occasionally cancelled some visits because mother was unable to visit with Vicente, father maintained mostly regular and consistent visitation with the children throughout the pendency of the case.

We also conclude father met his burden of proving the second element of the exception. The second element considers "whether 'the child would benefit from continuing the relationship'" with the parent. (*Caden C., supra*, 11 Cal.5th at

---

2      Although the minute order indicates the juvenile court found the parents had not maintained regular visitation and contact with Vicente, the reporter's transcript demonstrates the court found father met the first prong. (See *In re Merrick V.* (2004) 122 Cal.App.4th 235, 249 ["Conflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise."].)

4

p. 632, quoting § 366.26, subd. (c)(1)(B)(i).) "[T]he parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C., supra*, at p. 636.) The focus is on the child, and the relationship may be shaped by "a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Id.* at p. 632.)

The juvenile court found father "has not established a bond with the child." At the section 366.26 hearing, the trial court reasoned: "[T]he child has been away from the parents for two-thirds of his life. As [counsel for the Department of Children and Family Services (Department)] indicated, he's reached most of [his] milestones without his parents – a[dd] to that, the mother coaching the child during visits, the violation of the court orders." The evidence in the record, however, demonstrates that Vicente had a substantial attachment to his father and he would benefit, at least to some degree, from continuing the relationship. (*Caden C., supra*, 11 Cal.5th at p. 636.)

Vicente was detained from mother and father after the juvenile court sustained a petition alleging Vicente was at substantial risk of harm due to the parents' substance abuse and domestic violence. Vicente was five months old when he was detained in May 2021, and two-and-a-half years old at the time of the section 366.26 hearing in August 2023. Despite spending the majority of his life out of father's custody, as noted above, father maintained regular visitation for up to eight hours per week. In the April 18, 2023 section 366.26 report, the social worker who monitored visits relayed the visits were "free from incidents[,]"

father has a "strong bond with the child[,]" Vicente "interacts well with [father]" and "seeks [his] attention[,]" and the child calls father "'daddy.'" She further reported: "The child . . . has expressed distress after every visit with his parents in the form of crying, but is able to be soothed and comforted by the prospective adoptive applicants [paternal aunt and uncle] . . . ." In the same report, the Department acknowledged that "mother and father love their child . . . and there is a relationship that raises [*sic*] to the level of a parent-child relationship."

In a supplemental report, dated July 13, 2023, the paternal aunt relayed that Vicente "asks about his parents regularly" by asking if it is a "'Daddy Day'" or "whether or not his parents have a phone call scheduled." She further reported: Vicente "presents with nightmares on the nights following weekend visits with his parents and wakes up yelling for 'Mommy' or 'Daddy'."[3]

The Department notes that, according to the paternal aunt, at the beginning it was hard for Vicente to adjust to visits ending, but "now, after visits the transition is much easier. He says

_____

3      The Department downplays the nightmares by claiming they are caused by mother's coaching of Vicente to lie to the Department. But the record merely indicates that paternal aunt reported: "The next day, after his Saturday visit with [mother], Vicente got to my house and was saying 'Mommy home, mommy home!' He threw himself on the floor and cried and was upset. The coaching is effecting [*sic*] him in ways the parents cannot see. He has night terrors after the weekend visits mostly, yelling out for mommy and daddy." It is unclear from this report whether, in the paternal aunt's view, the coaching from mother (to tell "the Department that he wants to return to the mother's care") caused Vicente to wake up in the middle of the night screaming for his mother and father *or* whether it caused only the tantrums during which Vicente cried to go to mother's house.

6

goodbye to his parents and gets in the car without any issues." That Vicente has matured with respect to separating from father, however, does not demonstrate a lack of a substantial, positive relationship with him.

The Department next argues that even if Vicente had a substantial, positive, emotional attachment to father, the evidence does not show the child would benefit from continuing the relationship. It relies on the following evidence: (1) "[f]ather's claim of sobriety was questionable"; and (2) father prioritized his relationship with mother over Vicente. But "[a] parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the exception." (*Caden C., supra*, 11 Cal.5th at p. 637.) And the fact father prioritized his relationship with mother—and occasionally cancelled visits if mother was unable to visit—does not demonstrate a complete lack of a beneficial relationship between father and Vicente.[4] To the contrary, based on the evidence above, Vicente views father "as more than a mere friend or playmate" and his interactions with father were "not ambivalent, detached, or indifferent." (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1230.) For these reasons, we conclude substantial evidence does not support the trial court's finding that father "has not established a bond with the child." But, as discussed below, despite father's consistent visitation and his beneficial relationship with Vicente, the juvenile court did not abuse its discretion in analyzing the third element and ultimately concluding the benefits Vicente would realize from adoption

---

4       The Department also notes that mother accused father of sexually abusing Vicente because he had a rash on his "bottom private area." But a subsequent examination was negative for sexual abuse.

outweighed any harm or detriment Vicente might suffer from termination of father's parental rights.

For the third element, "the court must decide whether it would be harmful to the child to sever the relationship and choose adoption." (*Caden C., supra*, 11 Cal.5th at p. 633.) "[I]n assessing whether termination would be *detrimental*, the trial court must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632, original italics.)

In determining the effect of severing a parent-child relationship, the court must look to the effects on the child from severing the relationship, which might include "emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression. . . . [On the other hand,] a new, stable home may alleviate the emotional instability and preoccupation leading to such problems, providing a new source of stability that could make the loss of a parent not, at least on balance, detrimental." (*Caden C., supra*, 11 Cal.5th at p. 633.)

On appeal, father conflates the second and third elements. He therefore fails to address "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C., supra*, 11 Cal.5th at p. 633.)

The record contains ample evidence of the immense benefit to Vicente of placement in a new adoptive home. Vicente has lived with paternal aunt and uncle since October 31, 2022 (before he turned two years old). According to a January 19, 2023 status report, the social worker reported that Vicente was adjusting well to being under the care of paternal aunt and uncle, he was

8

"thriving" under their care, he has become very "attached to his cousin who is [two] years older than him" and paternal aunt and uncle have been "providing a safe and loving home" for Vicente. In a status report dated May 18, 2023, the social worker reported that Vicente continued to "thriv[e] under paternal relative care" and, as Vicente spends more time with his cousin, they are "displaying more of a brother-sister relationship." Further, "under paternal aunt and uncle's care, [Vicente] has had the opportunity to travel to a different state, experience new adventures such as being on a plane, and has been able to create wonderful memories with paternal family. [Paternal aunt and uncle] have been providing a safe, stable, nurturing, and loving home for [Vicente]."

On this record, we conclude the juvenile court did not abuse its discretion when it found the benefits and security of adoption by paternal aunt and uncle outweighed any detriment Vicente might experience from the termination of his relationship with father. (*Caden C., supra*, 11 Cal.5th at p. 640; see also see also *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker'"].) Thus, the juvenile court did not err when it held the parental-benefit relationship exception to adoption did not apply.

## DISPOSITION

The juvenile court's order terminating the parental rights of father and mother is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.